UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GOMBA MUSIC, INC., and
HARRY BALK,

     Plaintiffs,

v.

CLARENCE AVANT and
INTERIOR MUSIC CORP.,

     Defendants.

Case No. 14-cv-11767
Honorable Laurie J. Michelson
Magistrate Judge R. Steven Whalen

INTERIOR MUSIC CORP.,

     Third-Party Plaintiff,

v.

SIXTO RODRIGUEZ,

     Third-Party Defendant.

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT [18] AND GRANTING IN PART HARRY BALK'S
MOTION TO AMEND THE COMPLAINT [27]**

This dispute involves the rights to songs that were composed and released commercially more than forty years ago. Music publisher Harry Balk alleges that he owns all rights to the songs based on an exclusive song-writing agreement between his company, Gomba Music, Inc., and the songs' author, Sixto Rodriguez. But he says he did not learn that he had been defrauded of his rights to the songs until they were featured in the Oscar-winning documentary *Searching for Sugarman* in 2012. He filed this lawsuit in May 2014 on behalf of Gomba Music alleging

copyright infringement, fraudulent concealment, tortious interference with copyright, and fraud.[1] (Dkt. 1.)

Defendants filed a motion to dismiss the Complaint. They argued that an action for infringement of a copyright cannot be brought unless the copyright registration has first been issued or denied. (Dkt. 13.) In response, Balk amended the Complaint. (Dkt. 15, First Am. Compl. ("FAC").) The First Amended Complaint stated: "Plaintiffs have withdrawn the copyright infringement claim from this suit until such time as copyright filings made by Plaintiff are registered or denied by the Copyright Office." (*Id.* ¶ 12.) Defendants filed a second motion to dismiss, which is now before the Court. (Dkt. 18, Mot. to Dismiss.) It has been fully briefed and the Court heard oral argument on November 4, 2014. (*See* Dkt. 21, Resp. to Mot. to Dismiss; Dkt. 24, Reply for Mot. to Dismiss.)

After the second motion to dismiss was filed, the Copyright Office denied Balk's application for copyrights to the compositions at the heart of this case. Balk therefore filed a motion to amend the complaint to reinstitute his copyright infringement claim. (Dkt. 27, Mot. to Am.; Dkt. 28, Proposed Second Am. Compl. ("PSAC").) Defendants opposed, arguing that permitting the amendment would be futile because Balk cannot state a claim. (*See* Dkt. 31, Resp. to Mot. to Am.) The Court heard oral argument on this motion as well on November 4, 2014, and will decide the motions together.

For the reasons that follow, Defendants' Motion to Dismiss the First Amended Complaint (Dkt. 18) is GRANTED as to Gomba Music and DENIED in all other respects. Balk's Motion to

---

[1] As discussed below, the Gomba Music entity in whose name this suit was originally brought no longer exists. The true plaintiff is Harry Balk, who was the sole owner of Gomba Music and is the successor to its rights and claims. The Court therefore refers to Balk throughout this opinion as the party making claims and allegations, seeking to amend the Complaint, and opposing the motion to dismiss.

Amend the Complaint (Dkt. 27) is GRANTED IN PART. Balk is ORDERED to revise the proposed Second Amended Complaint to reflect the dismissal of Gomba Music's claims.

## I.  MOTION TO DISMISS STANDARD

The Federal Rules of Civil Procedure require that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff "must allege 'enough facts to state a claim of relief that is plausible on its face.'" *Traverse Bay Area Int. Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility means that "the complaint has to 'plead[] factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged.'" *Ohio Police & Fire Pension Fund v. Std. & Poor's Fin. Servs., LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "This standard does not require detailed factual allegations, but a complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012) (citation and internal quotation marks omitted).

The court must "accept all well-pleaded factual allegations as true and construe the complaint in the light most favorable to plaintiffs." *Bennet v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010). The court "need not, however, accept unwarranted factual inferences." *Id.* (citing *Twombly*, 550 U.S. at 570). Nor are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" entitled to an assumption of truth. *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

3

The Sixth Circuit has noted that "a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations," unless "the allegations in the complaint affirmatively show that the claim is time-barred." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 1239, 185 L. Ed. 2d 177 (2013).

## II.  MOTION TO AMEND STANDARD

When a party seeks to amend its pleading under Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave when justice so requires." The factors to be considered are "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision." *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 458 (6th Cir. 2001) (quoting *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)). Defendants oppose amendment solely on grounds of futility. A proposed claim is futile if it fails to state a claim upon which relief may be granted as that phrase is used in Rule 12(b)(6). *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

## III. ORDER STRIKING CERTAIN EXHIBITS

On a motion to dismiss for failure to state a claim, the Court may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

Defendants attached the following exhibits to their motion to dismiss: (1) articles of incorporation for Gomba Music filed with the state of Michigan in June 2014, (2) state of Michigan records regarding the incorporation of Gomba Music in 1965 and its dissolution in 1971, (3) original and renewal Gomba copyright registrations for "Forget It," and (4) a snapshot from www.amazon.com of the *Cold Fact* album reissue. (*See* Mot. to Dismiss Exhibits.) Balk's response to the motion to dismiss attaches the following exhibits: (A) an affidavit by Balk regarding the corporate status of Gomba Music, (B) a July 25, 2014, letter from Michigan's Department of Licensing and Regulatory Affairs, (C) records of copyright applications filed in the name of Gomba Music in March 2014, (D) a June 27, 2014 email from the Copyright Office acknowledging receipt of copyright applications, and (E) the Copyright Office Catalog of Copyright Entries for July–December 1969. (*See* Resp. to Mot to Dismiss Exhibits.)

The Court finds that Exhibits 1 to 3 to the motion to dismiss and Exhibits C and E to Balk's response to the motion to dismiss are public records and therefore may be considered. *See, e.g.*, *Brown v. S. Florida Fishing Extreme, Inc.*, No. 08-20678, 2008 WL 2597938, at *1 (S.D. Fla. June 27, 2008) ("Official Certificates of Registration from the U.S. Copyright Office are public records that may be considered in the instant motion without converting it into a motion for summary judgment."); *Ajaxo, Inc. v. Bank of Am. Tech. & Operations, Inc.*, No. 2:07-CV-945, 2007 WL 4180361, at *2 (E.D. Cal. Nov. 21, 2007) (taking judicial notice of copyright registrations on a motion to dismiss); *Grassmueck v. Barnett*, 281 F. Supp. 2d 1227, 1232 (W.D. Wash. 2003) (taking judicial notice of articles of incorporation on a motion to dismiss because "[a]s certified public records kept by the Secretaries of State in Washington and Delaware, the Articles fall directly into the category of items" that could be thus considered); *see also Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (holding that documents recorded by the U.S.

5

Patent and Trademark Office were public records subject to judicial notice on a motion to dismiss).

The Court further finds that Exhibit D (an email from the Copyright Office acknowledging receipt of copyright applications) is closely related to Balk's claims. But Exhibit 4 (the snapshot from amazon.com of the 2008 reissue of *Cold Fact*), and Exhibits A and B (Balk's affidavit and the letter from Michigan regarding Gomba's corporate status) are not public records and are not central to Balk's claims. The Court therefore STRIKES Exhibit 4 to Defendants' Motion to Dismiss and Exhibits A and B to Balk's Response to the Motion to Dismiss.

## IV. ALLEGATIONS OF THE COMPLAINTS

On July 25, 1966, Sixto Rodriguez signed an "Exclusive Writer Agreement" with Gomba Music ("Gomba/Rodriguez Agreement"), which was solely owned and controlled by Harry Balk. (FAC ¶ 8; FAC Ex. A.) The agreement provided:

> FIRST: The Publisher [Gomba Music] hereby employs the Writer [Sixto Rodriguez], and the Writer undertakes and agrees to render his exclusive services in the writing and composing of original musical compositions, numbers and works to the Publisher, both alone and in collaboration with others, as designated, directed, selected and required by the Publisher.
>
> SECOND: It is understood and agreed, that as the product of all such services under this agreement, is to be made and created by the Writer for the Publisher for hire, all such product made and created by the Writer, alone or in collaboration with others, shall be the sole property of the Publisher, everywhere and forever, with all copyrights therein and all renewals and extensions thereof, throughout the world, . . . .
>
> THIRD: During the term of this agreement the Writer shall not write or compose, or furnish or dispose of, any musical compositions, numbers, works or materials, or any rights or interests therein whatsoever, other than for and to the Publisher.

(FAC Ex. A.) The Agreement was effective through July 25, 1971. (*Id.*)

6

In March 1970, Defendant Clarence Avant's record label, Venture Records, released *Cold Fact*, an album performed by Sixto Rodriguez. (FAC ¶ 9; FAC Ex. B.) The album included the following songs: "Sugar Man," "Only Good for Conversation," "Crucify," "Establishment Blues," "Inner City Blues," "I Wonder," "Like Janis," "Rich Folks Hoax," and "Jane S. Piddy." (collectively, "the *Cold Fact* Compositions").[2] (FAC ¶ 11; FAC Ex. B.) All songs on the album were published by Avant's corporation, Defendant Interior Music. (FAC Ex. B.) The album credits named Jesus Rodriguez and Sixth Prince, Inc., as the authors of the *Cold Fact* Compositions. (*Id.*; FAC ¶ 14.) Jesus Rodriguez is described in the complaint as "purportedly Sixto Rodriguez's brother." (First Am. Compl. ¶ 9.) The credits did not name Sixto Rodriguez as an author of the *Cold Fact* Compositions. (*Id.* ¶ 14.)

The First Amended Complaint alleges "upon information and belief" that Interior Music "entered into a series of individual song contracts with, among others, Jesus Rodriguez," covering "some or all" of the *Cold Fact* Compositions, and that "Avant instructed Sixto Rodriguez to set up Sixth Prince, Inc. and Sandreven, Inc. as a part of the scheme to register copyrights for musical compositions authored by Sixto Rodriguez and then assign those copyrights to Interior." (FAC ¶¶ 9–10.)

Sixto Rodriguez is the true author of the *Cold Fact* Compositions. (*Id.* ¶ 14.) Balk thus maintains that under the Gomba/Rodriguez Agreement, the *Cold Fact* Compositions belong to Gomba Music. (*Id.* ¶ 13.) Avant knew that Sixto Rodriguez was the true author of the *Cold Fact* Compositions and knew that Sixto Rodriguez had an exclusive contract with Gomba Music. (*Id.*

---

[2] The songs identified by the First Amended Complaint as "the *Cold Fact* Compositions" on which Balk's claims are based comprise nine of the twelve songs on the album. Two other songs on the album are attributed to Gary Harvey, Mike Theodore, and Dennis Coffey. The twelfth song is "Forget It," attributed to Jesus Rodriguez. (Balk says in his brief opposing the motion to dismiss that "Gomba assigned the rights to 'Forget It' to Jobete Music Co. Inc. in or about 1969." (Resp. to Mot. to Dismiss at 18.))

¶¶ 9, 13–14.) He intentionally left Sixto Rodriguez off of the credits for the *Cold Fact* Compositions. (*Id.* ¶ 14.) Defendants knew that Jesus Rodriguez and Sixth Prince did not author the *Cold Fact* Compositions and intentionally represented that they did. (*Id.* ¶ 18.)

When the album was released, Balk reviewed the credits to determine whether Sixto Rodriguez was the author of the *Cold Fact* Compositions. (*Id.* ¶ 14.) He did not pursue a claim at the time because Sixto Rodriguez was not named on the album credits. (*Id.*) The Complaint does not allege that anyone ever told Balk that Sixto Rodriguez was the true author.

Sometime between February 23, 1970, and January 1, 1979, Defendants instructed Sixto Rodriguez to assign the *Cold Fact* Compositions to Interior Music. (*Id.* ¶ 19.) Interior Music then filed copyrights to the *Cold Fact* Compositions in its own name. (*Id.*)

The First Amended Complaint alleges "upon information and belief" that "Defendants willfully, deliberately, and fraudulently provided, and instructed Sixto Rodriguez to provide, false and material information to the Copyright Office by misstating the identity of the author and owner of the *Cold Fact* Compositions on the *Cold Fact* copyright registrations in order to deprive Plaintiffs of their rightful interest and to induce and cause the Copyright Office to improperly grant the registrations." (*Id.* ¶ 17.)

*Cold Fact* was a commercial failure in the United States but, unbeknownst to Sixto Rodriguez, it became enormously popular in South Africa. (*Id.* ¶ 24.) This was chronicled in the documentary *Waiting for Sugar Man*, which was released in July 2012 and won an Academy Award. (*Id.* ¶ 24.) Interior Music was still listed as the publisher of the Cold Fact Compositions on the *Searching for Sugar Man Original Motion Picture Soundtrack* released July 24, 2012. (*Id.* ¶ 22.)

8

Balk "did not become aware of the fraud perpetrated on him and his company until sometime after the release of the film." (*Id.* ¶ 26.) He contacted Defendants about it on May 8, 2013. (*Id.* ¶ 32.) This suit was filed on May 2, 2014. The current complaint includes three counts: (i) fraud on the copyright office, (ii) declaratory relief that Plaintiffs are the owners of the *Cold Fact* Compositions, and (iii) fraudulent concealment/tortious interference with contract/fraud.

The proposed Second Amended Complaint includes these same three claims, as well as a claim for copyright infringement. The copyright infringement claim is based on allegations that Balk filed an expedited application for registration for the *Cold Fact* Compositions on June 27, 2014, and the application was refused on August 13, 2014. (PSAC ¶¶ 5, 12, 33–34, 61–68.)

## V.  ANALYSIS

At the hearing, Plaintiffs' counsel agreed to dismiss Gomba Music as a plaintiff. Harry Balk, who was added as a plaintiff by the First Amended Complaint, may proceed as the real party in interest, as explained below. The Court then considers each count of the First and Second Amended Complaints and finds that (1) Balk may assert a claim for declaratory judgment for fraud on the copyright office; and (2) Balk adequately pled that the statutory limitation periods for Balk's declaratory judgment, tort, and Copyright Act claims were tolled by fraudulent concealment.

### A.  Harry Balk and Gomba Music

When this action was filed, Gomba Music was the only plaintiff. But Gomba Music "was administratively dissolved by the state for failure to file an annual report" in 1971. (Resp. to Mot. to Dismiss at 1.) Balk states that this action "was originally filed in Gomba's name based on good faith communications with the State of Michigan that the State would retroactively

reinstate the entity." (Mot. to Am. at 7.) The State of Michigan, however, later "reversed itself and denied retroactive reinstatement of Gomba Music Inc." (*Id.*) A new corporation with the same name was incorporated in Michigan on June 25, 2014, but Balk says that entity "is unrelated to this action." (Resp. to Mot. to Dismiss at 1.)[3] Defendants argued that the claims of Gomba Music must be dismissed because it no longer exists. (Mot. to Dismiss at 11; Resp. to Mot. to Am. at 10–12.) Balk conceded the point at the hearing.

But when the First Amended Complaint was filed (as a matter of course within 21 days of Defendants' Motion to Dismiss, under Federal Rule of Civil Procedure 15(a)(1)(B)), Harry Balk was added as a plaintiff. (Dkt. 15.) Balk argues that when Gomba Music dissolved, any interests it held were transferred to him, as sole shareholder of the company, by operation of law. (Resp. to Mot. to Dismiss at 8–10.) Defendants have not addressed the merits of this argument. The Court finds that Balk's argument is supported by the law.

A copyright may be transferred by operation of law without an instrument in writing. This is clear under the current Copyright Act of 1976, which provides that "[t]he ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law . . . ." 17 U.S.C. § 201(d)(1). Although transfers typically must be in writing, that requirement does not apply to transfers "by operation of law." 17 U.S.C. § 204(a). But Balk points out that the *Cold Fact* Compositions were created before 1976, and therefore the 1909 Copyright Act applied. (Resp. to Mot. to Dismiss at 8.) That Act was less clear on this issue. It provided: "Copyright secured under this title or previous copyright laws of the United States may be assigned, granted, or mortgaged by an instrument in writing signed by the proprietor of the

---

[3] Because Balk acknowledges that the newly incorporated Gomba Music entity is not part of this action, the Court does not address Defendants' argument that it does not have standing. (Resp. to Mot. to Am. at 11–12.) Where the Court refers to Gomba Music in this opinion, it refers solely to the entity that was dissolved in 1971.

copyright, or may be bequeathed by will." 17 U.S.C. § 28 (repealed 1978). Balk cites a Northern District of California case in which the court found that "copyright transfers by operation of law were valid" under the 1909 Act. (Resp. to Mot. to Dismiss at 8 (citing *Fantasy, Inc. v. Fogerty*, 664 F. Supp. 1345, 1356 (N.D. Cal. 1987), *aff'd*, 984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)).)

In *Fantasy, Inc. v. Fogerty*, the copyrighted work at issue was a song written in 1970. *Fantasy*, 664 F. Supp. at 1355. The defendant argued that there was a broken link in the plaintiff's chain of title to the copyright because the company that owned the copyright, Galaxy, was liquidated and dissolved in 1970, and there was no written instrument by which the copyright was transferred to its sole shareholder, Argosy. *Id.* The court concluded that Argosy, as Galaxy's sole shareholder, acquired all assets of Galaxy including the subject copyright upon Galaxy's 1970 dissolution, and that the 1909 Copyright Act's requirement that transfers be in writing did not apply to copyright transfers by operation of law. *Id.* at 1356. The court "found no case authority or legislative history indicating that the requirements of § 28 applied to transfers by operation of law," and "[i]n fact, case and treatise authority point to the opposite conclusion, that copyright transfers by operation of law were valid under the 1909 Copyright Act." *Id.* (citing *Brecht v. Bentley*, 185 F. Supp. 890 (S.D.N.Y. 1960) (intestate succession); 18 C.J.S. Copyright and Literary Property §§ 82–83 (1939) ("the transfer of copyright may be effected either by operation of law or by voluntary assignment").) The court also noted that "section 28's enumerated types of transfer, 'assigned, granted, or mortgaged,' denote voluntary action taken by the copyright proprietor, thus § 28 appears unconcerned with involuntary transfers imposed by law." *Id.* And furthermore, the *Fantasy* court reasoned, the 1976 Copyright Act explicitly does not require a writing for copyright transfers by operation of law, and "[w]here principles

11

compelled under the Copyright Act of 1976 are not precluded by decisions under the 1909 Act, those principles should be implemented to the extent possible." (*Id.*, quoting *Jerry Vogel Music Co. v. Warner Bros. Inc.*, 535 F. Supp. 172, 175 (S.D.N.Y.1982).)[4]

Another court in this judicial district found a copyright transfer by operation of law was valid where the copyright owner merged with another company to form a new limited liability company, which later brought an infringement suit based on the copyright. *Design Basics, L.L.C. v. DeShano Co.*, No. 10-14419, 2012 WL 4321313, at *4–5 (E.D. Mich. Sept. 21, 2012). The court found the LLC could claim ownership because Nebraska law, under which it was formed, provided that a new limited partnership formed by merger possesses all the rights of each of the merging entities. *Id.* The court noted that "[c]ases dealing with copyright transfers by operation of law are scarce." *Id.* at *4.

This Court finds the *Fantasy* and *Design Basics* courts' reasoning persuasive. Michigan's Business Corporation Act provides that upon dissolution, a corporation's "remaining assets shall be distributed, except as otherwise provided in this section, in cash, in kind, or both in cash and in kind, to shareholders according to their respective rights and interests." Mich. Comp. Laws § 450.1855a; *see also Pontiac Trust Co. v. Newell*, 254 N.W. 178, 181 (Mich. 1934) (holding that under Michigan law, "[o]rdinarily private corporations belong to the stockholders, and the assets of a private corporation for profit, upon the dissolution of the corporation, belong to the stockholders or members, as of the date of its dissolution."). By operation of law, any rights that Gomba Music had in the *Cold Fact* Compositions transferred to Balk as sole shareholder when the corporation dissolved.

---

[4] The decision was appealed on other grounds and affirmed by the Ninth Circuit. 984 F.2d 1524. The Supreme Court granted certiorari to address the district court's award of attorneys' fees. 510 U.S. 517. In describing the case the Supreme Court noted that the plaintiff "obtained the copyright by assignment." 510 U.S. at 519.

Instead of addressing the merits of Balk's argument that Gomba Music's rights transferred to him by operation of law, Defendants argue that Balk's claim should be rejected because it was not pleaded and because it contradicts the complaint, which states that Gomba Music has filed an application for copyright registration for the *Cold Fact* Compositions. (Mot. to Dismiss Reply at 2–3; FAC ¶ 11.) They also argue that Balk cannot be substituted as plaintiff for Gomba Music because the failure to name the correct plaintiff was in bad faith. (Resp. to Mot. to Am. at 2–3, 19–23.)

Federal Rule of Civil Procedure 17 provides that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action," after which "the action proceeds as if it had been originally commenced by the real party in interest." Fed. R. Civ. P. 17(a)(3). This rule was "designed to avoid forfeiture and injustice when an understandable mistake has been made in selecting the party in whose name the action should be brought." Wright & Miller, 6A *Fed. Prac. & Proc.* § 1555 (3d ed.) (collecting cases). Thus, it has been held that "the rule should be applied only to cases in which substitution of the real party in interest is necessary to avoid injustice," and not "when the determination of the right party to bring the action was not difficult and when no excusable mistake had been made." (*Id.*)

Defendants argue that this case is like *Lans v. Digital Equipment Corp.*, 252 F.3d 1320 (Fed. Cir. 2001). (*See* Resp. to Mot. to Am. at 20.) There, the Federal Circuit Court of Appeals held that the district court did not abuse its discretion by denying leave to amend the complaint where the plaintiff purported to own a patent he did not actually own, did not disclose the actual owner until a defendant discovered he had assigned the patent, "and even then he equivocated."

13

*Lans*, 252 F.3d at 1328. This case is different. Balk was the sole owner of Gomba Music (FAC ¶ 8), and the successor to its claims. He has explained that until recently he believed Michigan planned to reinstate Gomba Music. (Mot. to Am. at 7.)[5] And since learning otherwise, Balk says, he has filed new copyright applications in his own name. (*Id.*) The court finds this explanation reasonable and not the product of bad faith. Indeed, it is not clear what Balk would have gained by bringing the action in Gomba Music's name instead of his own.

It seems clear to the Court that Balk's decision to sue in Gomba Music's name was due to his mistaken belief that the entity would be reinstated and that it was necessary to sue in Gomba's name because it was the original assignee of rights via the Gomba/Rodriguez Agreement. The Court sees no reason not to allow substitution of Balk for the defunct company he formerly owned as sole proprietor. *See Knight v. New Farmers Nat. Bank*, 946 F.2d 895 (table), 1991 WL 207056, at *2 (6th Cir. 1991) ("[T]he district court did not afford plaintiffs any time to substitute the trustee after determining that the trustee was the real party in interest. We believe the district court should first consider ratification or substitution by the trustee prior to dismissing plaintiffs' case.").

The Court now turns to whether Balk has stated a claim.

**B. Count I—Fraud on the Copyright Office**

Count I of both the First Amended Complaint and the proposed Second Amended Complaint is for "Fraud on the Copyright Office." (FAC ¶¶ 33–45; PSAC ¶¶ 35–47.) Plaintiff stated at the hearing that this claim was solely for declaratory judgment. Defendants argue that this count should be dismissed because fraud on the copyright office is a defense to an

---

[5] This assertion is supported by exhibits that the Court has struck because they cannot be considered on a Rule 12(b)(6) motion to dismiss for failure to state a claim. The Court considers the assertion here only for the limited purpose of determining under Rule 17 whether Balk made an excusable mistake by naming the wrong party when the action was filed.

infringement claim, not a stand-alone cause of action. (Mot. to Dismiss at 14–15; Resp. to Mot. to Am. at 12.) They rely primarily on *Esbin & Alter, LLP v. Zappier*, No. 08 CIV. 313, 2011 WL 940228, 2011 U.S. Dist. LEXIS 27881 (S.D.N.Y. Mar. 17, 2011), in which the court dismissed the defendant's counterclaim for fraud on the copyright office but allowed defendant to assert it as an affirmative defense to infringement. 2011 WL 940228, at *2–3.

Defendants are correct insofar as "Fraud on the Copyright Office is not an independent claim but, rather, an attack on the prima facie validity provided under Section 410(c)." 5 *Patry on Copyright* § 17:126. Nonetheless, some courts have permitted claims for declaratory judgment that a copyright is invalid based on fraud on the copyright office. *See, e.g.*, *Shirokov v. Dunlap, Grubb & Weaver, PLLC*, No. 10-12043, 2012 WL 1065578, at *31 (D. Mass. Mar. 27, 2012) (rejecting defendants' argument that claim for fraud on the Copyright Office was not a recognized independent cause of action and should be dismissed and finding that "although Shirokov may seek a declaration that Achte's copyright is invalid based on fraud on the Copyright Office, he cannot seek damages against the defendants on that basis."); *Crew Knitwear, Inc. v. U.S. Textile Printing, Inc.*, No. CV07-7658, 2009 WL 305526, at *2 (C.D. Cal. Feb. 6, 2009) (denying summary judgment on plaintiff's fraud on the copyright office claim despite defendants' argument that it was not ripe for review; "[T]he Copyright Office *has* taken action by affirmatively approving Defendants' applications, relying upon the veracity of the contents made therein." (emphasis in original)); *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, No. 1:05 CV 1519, 2008 WL 2404972, at *11 (N.D. Ohio June 11, 2008) (denying plaintiff's motion for judgment on the pleadings on defendant's counterclaim for a declaratory judgment of invalid copyright based on fraud on the copyright office); *see also Too, Inc. v. Kohl's Dep't Stores, Inc.*, 210 F. Supp. 2d 402, 405 (S.D.N.Y. 2002) ("Thus, if Too pled the

15

fraudulent misrepresentation to the Copyright Office component of its unfair competition action as a free-standing claim, Too would be limited to its remedy under the Copyright Act, that is, to use such information to rebut the presumption of a valid copyright as provided under 17 U.S.C. § 410."); *Lennon v. Seaman*, 84 F. Supp. 2d 522, 526 (S.D.N.Y. 2000) (dismissing claim as not ripe where "Plaintiff alleges fraud on the Copyright Office not as a defense to the enforcement of a copyright, but as a cause of action seeking injunctive and declaratory relief. . . . However, Plaintiff filed her Complaint before the Copyright Office has taken any action with respect to the Defendant's allegedly fraudulent application.").

Likewise here, Balk may assert fraud on the copyright office as a declaratory judgment action to attack the prima facie validity of Defendants' copyrights on the *Cold Fact* Compositions. The Motion to Dismiss is denied as to Count I of the First Amended Complaint, and Defendants' argument that the Motion to Amend is futile with respect to Count I of the proposed Second Amended Complaint is rejected.

### C.  Count II—Declaratory Judgment

Count II of both the First Amended Complaint and the proposed Second Amended Complaint is for a declaratory judgment that Balk is the owner and exclusive rights-holder of the *Cold Fact* Compositions. (FAC ¶¶ 46–50; PSAC ¶¶ 48–52.) Defendants argue that this claim "rises and falls with the underlying substantive claims," which they assume are the tort claims in Count III, and which they argue are barred by the applicable statutory limitations periods. (Mot. to Dismiss at 17.) Balk argues that in fact this claim is based on the Copyright Act, and it is tolled by Defendants' fraudulent concealment. (Resp. to Mot. to Dismiss at 20.) Balk also argues that "[e]ven if [he] knew or should have known of the fraud, which he did not and could not, he

16

is still entitled to declaratory relief," because "[t]o allow Defendants to continue to control the interests in the copyrights would be an unjust enrichment for their fraudulent deeds." (*Id.* at 21.)

Defendants correctly point out that the Sixth Circuit has held that a declaratory judgment claim can be subject to a limitations period. (Reply for Mot. to Dismiss at 6.) In *International Association of Machinists & Aerospace Workers v. Tennessee Valley Authority*, the plaintiff, IAM, argued that "if it is barred by the statute of limitations from gaining substantive relief on its claims, it may still obtain a declaratory judgment" because "the parties have continuing rights and obligations under the agreement, and [] a judicial interpretation of the agreement would affect those rights and obligations." 108 F.3d 658, 667 (6th Cir. 1997). The Sixth Circuit said: "IAM has confused the requirement that it must have standing to pursue declaratory relief with the requirement that it must not have a claim that has been made stale by the statute of limitations. A request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred." *Id.* at 668–69.

Thus, whether Balk's claim for declaratory relief is barred depends on the Copyright Act's limitations period. The Copyright Act provides that an action for copyright infringement is barred "unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). A copyright infringement claim "accrues when a plaintiff knows of the potential violation or is chargeable with such knowledge." *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 390 (6th Cir. 2007) (quoting *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004)).

A key question here is what constitutes the "potential violation" that plaintiff must be charged with knowing for the claim to accrue. This question garnered little attention in the parties' briefs but became a focus of oral argument at the hearing. Defendants appear to argue

17

that if Balk can be charged with knowledge of the fraud when the *Cold Fact* Compositions were falsely attributed to songwriters other than Sixto Rodriguez, he is barred from asserting any infringement claims based on the *Cold Fact* Compositions. Balk appears to argue that even if he can be charged with knowledge of the fraud in 1971, he still has rights to the *Cold Fact* Compositions and can assert claims based on infringements that occurred within three years of filing his claim.

Balk cites *Stone v. Williams*, 970 F.2d 1043 (2d Cir. 1992), in support of his position. In *Stone*, the Second Circuit held that the plaintiff's claim for royalties received within three years of filing the suit was not barred by the fact that she did not seek a judicial determination of her rights within three years of when she first learned that she was the daughter of the works' author, country music star Hank Williams, Sr. *See id.* at 1051.

The Supreme Court recently cited *Stone* in support of its statement that under the Copyright Act, "each infringing act starts a new limitations period." *Petrella v. Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1969 (2014). But the court noted that "[s]eparately accruing harm should not be confused with harm from past violations that are continuing." *Id.* at 1969 n.6. In *Petrella*, the wife of one of the authors of the screenplay for *Raging Bull* waited 18 years after filing a copyright renewal that reverted to her on his death before she sued the movie studio, but she sought relief only for acts of infringement that occurred within three years of her suit. *Id.* at 1971. The district court found her claims were barred by laches and the Ninth Circuit affirmed. *Id.* at 1971–72. The Supreme Court reversed, ruling that the equitable doctrine of laches generally does not apply to claims under the Copyright Act, which has its own statute of limitations that "itself takes account of delay." *Id.* at 1973. The Court said, "Section 507(b)'s three-year limitations period . . . allows a copyright owner to defer suit until she can estimate

18

whether litigation is worth the candle. She will miss out on damages for periods prior to the three-year look-back, but her right to prospective injunctive relief should, in most cases, remain unaltered." *Id.* at 1976. The Court's decision in *Petrella* clearly indicates that the Copyright Act does not bar relief for recent infringements based on earlier delay. But there was no ownership dispute in *Petrella*.

Defendants rely on *Merchant v. Levy*, 92 F.3d 51 (2d Cir. 1996), in which—they point out—the Second Circuit said that *Stone* was based on "highly idiosyncratic facts," and merely "stands for the narrow proposition that, in certain situations, the statute of limitations will not be applied to defeat the copyright co-ownership claim of an author's relative accruing more than three years before the lawsuit where uncertainty surrounded the relative's status as a member of the author's family." *Id.* at 56. In *Merchant*, two of three children who wrote a song were not listed as authors on the copyright registration, but they did not sue within three years of reaching the age of majority. *See id.* The appellate court reversed the district court's finding that they were entitled to a declaration of rights and damages for the three years preceding the action. *Id.* The court said:

> Unlike *Stone*, where the copyright co-ownership claim was based on plaintiff's uncertain status as an heir, no similar uncertainty exists as to co-ownership rights based on co-authorship. A co-author knows that he or she jointly created a work from the moment of its creation. Accordingly, the concerns motivating our decision in Stone are not present here. We hold that plaintiffs claiming to be co-authors are time-barred three years after accrual of their claim from seeking a declaration of copyright co-ownership rights and any remedies that would flow from such a declaration.

*Id.*

The Sixth Circuit has held that "[w]hen claims for both infringement and ownership are alleged, the infringement claim is timely only if the corresponding ownership claim is also timely." *Roger Miller Music*, 477 F.3d at 389–90 (6th Cir. 2007) (citing *Ritchie v. Williams*, 395

19

F.3d 283, 288 n.5 (6th Cir. 2005)). And unlike an infringement claim, "[a] copyright ownership claim 'accrues only once, and if an action is not brought within three years of accrual, it is forever barred.'" *Id.* (quoting *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996), *as amended* (June 14, 1996)). Thus the key distinction may be whether Balk's underlying claim is properly characterized as an ownership claim rather than an infringement claim.

But the Court hesitates to weigh in on an issue that the parties have not fully briefed. Moreover, the issue is not essential to deciding this motion because even if the dispositive question is when Balk was chargeable with knowledge that the *Cold Fact* Compositions were composed by Sixto Rodriguez and fraudulently attributed to other songwriters, the Court finds it is plausible that Balk was not chargeable with that knowledge before *Waiting for Sugarman* was released in 2012.

First, the Court must determine when a plaintiff is "chargeable with knowledge." *Roger Miller Music*, 477 F.3d at 390. There is little Sixth Circuit case law on when a party has constructive knowledge of a copyright claim. *See, e.g.*, *Design Basics, LLC v. Chelsea Lumber Co.*, 977 F. Supp. 2d 714, 723 (E.D. Mich. 2013) ("The parties have pointed to no Sixth Circuit authority in which the court analyzed when a party without actual knowledge of claimed copyright infringement is deemed to be 'chargeable' with such knowledge, and the Court is not aware of any."). Defendants argue that an inquiry notice standard applies, under which:

> The plaintiff need only possess a low level of awareness; he need not fully learn of the alleged wrongdoing. Knowledge of all facts is not required to set off the prescriptive clock. Thus, the clock begins to tick when a plaintiff senses 'storm warnings,' not when he hears thunder and sees lightning.

*Harner v. Prudential-Bache Sec., Inc.*, 35 F.3d 565 (table), 1994 WL 494871, at *4 (6th Cir. 1994) (discussing the statute of limitations in a securities fraud case and quoting *Jensen v. Snellings*, 636 F. Supp. 1305, 1309 (E.D. La. 1986)). (See Resp. to Mot. to Am. at 13–15.) Balk

suggests a similar standard, which another court in this district has applied in the copyright context:

> a cause of action accrues when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim. Applying that precept here, we ask whether [plaintiff] "should have known of the basis for [its] claims[, which] depends on whether [it] had sufficient information of possible wrongdoing to place [it] on inquiry notice or to excite storm warnings of culpable activity.

*William A. Graham Co. v. Haughey*, 568 F.3d 425, 438 (3d Cir. 2009) (internal citations and quotation marks omitted); *see Design Basics*, 977 F. Supp. 2d at 724. (*See* Resp. to Mot. to Dismiss at 20.) "Storm warnings" is not a high threshold for a plaintiff's constructive knowledge, but this standard is not specific to the fraudulent concealment context.

The Sixth Circuit has provided more guidance on when fraudulent concealment tolls a limitations period under federal law.[6] The following test applies:

> Three elements must be pleaded in order to establish fraudulent concealment: (1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts.

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446 (6th Cir. 2012) (quoting *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975), and finding that the plaintiff adequately pleaded fraudulent concealment of its Sherman Act claim). To evaluate a plaintiff's due diligence, "the court should evaluate [the] acts of active concealment as a factor in determining whether the plaintiff's investigation was reasonable under the circumstances." *Id.* at

---

[6] Although the Supreme Court recently held that the equitable defense of laches could not be applied to copyright claims, the Court distinguished the equitable doctrine of fraudulent concealment: "Tolling, which lengthens the time for commencing a civil action in appropriate circumstances, applies when there is a statute of limitations; it is, in effect, a rule of interpretation tied to that limit." *Petrella*, 134 S. Ct. at 1975. In a footnote, the Court identified fraudulent concealment as an example of "appropriate circumstances." *Id.* at 1975 n.17.

447; *see Venture Global Eng'g, LLC v. Satyam Computer Servs., Ltd.*, 730 F.3d 580, 589 (6th Cir. 2013) (reversing dismissal based on statute of limitations where plaintiffs' allegations of diligence—review of publicly available documents and reliance on defendant's representations—were "reasonable under the circumstances").

Importantly, the Sixth Circuit has urged caution in evaluating allegations of fraudulent concealment on a motion to dismiss: "Although we may dismiss a claim of fraudulent concealment when it is obvious from the complaint that the plaintiff conducted absolutely no investigation, when there is some question as to the depth and scope of that investigation, a plaintiff should be allowed to proceed forward." *Carrier Corp.*, 673 F.3d at 448–49 (citation omitted) (declining to hold that the plaintiffs' efforts were insufficient to satisfy the third element "at such an early stage of litigation and without the benefit of discovery"); *see also Venture Global*, 730 F.3d at 589 ("Whether plaintiffs can ultimately prove their allegations should be determined on a motion under Rule 56 or at trial, once the facts are developed."); *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 476 (6th Cir. 2013) (holding that plaintiffs might be entitled to equitable tolling on the basis of fraudulent concealment but "these are questions for summary judgment or for trial, and they should not be resolved on a motion to dismiss").

The parties' arguments about fraudulent concealment center on the tort claims in Count III and Michigan case law. Balk's allegations regarding his knowledge and investigation of his claims will therefore be addressed in detail below, when the Court turns to Count III. But the Court finds that applying Sixth Circuit case law to Balk's allegations does not yield a different result. Though a close question, it is plausible that Balk was not placed on notice of his claims until sometime after the release of *Waiting for Sugar Man* in July 2012. Thus, it is plausible that Balk timely filed his claim for declaratory judgment in May 2014, and dismissal at this early

stage of the litigation would be premature. The Motion to Dismiss is denied as to Count II of the First Amended Complaint, and Defendants' argument that the Motion to Amend is futile with respect to Count II of the proposed Second Amended Complaint is rejected.

### D. Count III—Tort Claims

Count III of both the First Amended Complaint and the proposed Second Amended Complaint is for "fraudulent concealment/tortious interference with contract and fraud." (FAC ¶¶ 51–58; PSAC ¶¶ 53–60.) Defendants point out that the acts underlying the tortious interference and fraud claims occurred more than forty years ago. They argue that fraudulent concealment cannot toll the applicable statutes of limitations because, based on the allegations of the complaint, Balk knew of the release of *Cold Fact* and thereby had notice of any potential claims. (Mot. to Dismiss at 17–25; Resp. to Mot. to Am. at 12.) Balk argues that the release of *Cold Fact* did not give him notice of his claims because it fraudulently credited songwriters other than Sixto Rodriguez. (Resp. to Mot. to Dismiss at 20–21.) Again, the Court finds it is a close question, but Balk's position is sufficiently plausible to survive the motion to dismiss.

According to Defendants, fraud claims are subject to a six-year statute of limitations and tortious interference with contract has a three-year limitations period under Michigan law. (Mot. to Dismiss at 18.)[7] Balk argues that the applicable limitations period is that of Michigan's fraudulent concealment statute, which provides:

---

[7] Defendants cite M.C.L. § 600.5813 ("All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes."), *Blue Cross & Blue Shield of Michigan v. Folkema*, 436 N.W.2d 670, 673 (1988) ("The six-year limitation period of M.C.L. § 600.5813; M.S.A. § 27A.5813 applies when damages are sought for injury to the plaintiff's financial expectations."), M.C.L. § 600.5805(10) ("Except as otherwise provided in this section, the period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person, or for injury to a person or property."), and *James v. Logee*, 388 N.W.2d 294, 296 (1986) ("We hold that the

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

Mich. Comp. Laws § 600.5855. (See Resp. to Mot. to Dismiss at 19–20.) Under this statute, the "plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment." *Doe v. Roman Catholic Archbishop of Archdiocese of Detroit*, 692 N.W.2d 398, 405 (Mich. Ct. App. 2004) (quoting *Sills v. Oakland Gen. Hosp.*, 559 N.W.2d 348, 352 (Mich. Ct. App. 1996)).

The key question when fraudulent concealment is alleged is whether a plaintiff's failure to discover the cause of action was due to his own neglect or due to the defendant's concealment. Under the statute, "the plaintiff must be held chargeable with knowledge of the facts, which it ought, in the exercise of reasonable diligence, to have discovered." *Barry v. Detroit Terminal R.R. Co.*, 307 Mich. 226, 11 N.W.2d 867, 870 (Mich. 1943); *see also CH Holding Company v. Miller*, No. 293686, 2011 WL 5008573, at *5 (Mich. Ct. App. Oct. 20, 2011) ("The plaintiff is also charged with the discovery of facts that, with the exercise of reasonable diligence, he ought to have discovered."); *Lemson v. Gen. Motors Corp.*, 238 N.W.2d 414, 415 (Mich. Ct. App. 1975) ("[A] party will be held to know what he ought to know . . . by the exercise of ordinary diligence." (quoting *Weast v. Duffie*, 262 N.W. 401, 402 (Mich. 1935))). If the fault for failing to discover the claim is fairly laid at plaintiff's door, the time to file the claim cannot be tolled. "Thus, the question of whether a plaintiff has sufficient knowledge to bring a claim is not based on 'whether the plaintiff has knowledge of sufficient facts to prevail on a claim, but whether the

---

applicable period of limitation for actions for tortious interference with a contract is that provided in M.C.L. § 600.5805(8); M.S.A. § 27A.5805(8)."). (Mot. to Dismiss at 18 n.6.)

24

plaintiff has knowledge of sufficient facts to cause a reasonable person to pursue an investigation that could uncover the evidence needed to lead to an ultimate victory.'" *Estate of Abdullah ex rel. Carswell v. Arena*, No. 12-14766, 2014 WL 1304725, at *5 (E.D. Mich. Mar. 28, 2014) (quoting *Moll v. Abbott Labs.*, 506 N.W.2d 816, 826 n.25 (Mich. 1993)). "In other words, a plaintiff is sufficiently apprised of a cause of action if he or she is aware of a 'possible cause of action.'" *Id.* (quoting *Doe*, 692 N.W.2d at 643); *see also McNaughton v. Rockford State Bank*, 246 N.W. 84, 86 (Mich. 1933) ("To prevent the barring of an action, it must appear that the fraud not only was not discovered, but could not have been discovered with reasonable diligence, until within the statutory period before the action was begun."); *Prentis Family Found. v. Barbara Ann Karmanos Cancer Inst.*, 698 N.W.2d 900, 909 (Mich. Ct. App. 2005) ("If liability were discoverable from the outset, then MCL 600.5855 will not toll the applicable period of limitations.").

Here, Balk alleges that his claim was fraudulently concealed by Defendants' intentional misrepresentations. (*See* FAC ¶¶ 15, 17.) Balk alleges that "knowing Sixto Rodriguez was the performer on the album," he "tried to determine whether Sixto was an author of the *Cold Fact* compositions by reviewing the credits." (FAC ¶ 14.) The credits "stated that Jesus Rodriguez and Sixth Prince were the writers." (*Id.*) Balk explains that "Sixto Rodriguez was not an author of the *Cold Fact* Compositions and therefore Balk did not pursue a claim at that time." (*Id.*) Defendants argue that Balk could have contacted the album's publisher, record company, or production company, the individuals or entities identified as songwriters, or Sixto Rodriguez himself to investigate, and Balk does not allege that he did any of that. (*See* Mot. to Dismiss at 22.) In short,

Defendants argue that Balk had reason to be suspicious[8] yet did not exercise reasonable diligence to discover his claim, and therefore he cannot rely on their alleged fraudulent concealment to toll that claim.

Defendants rely on a case involving allegations of sexual abuse by a priest, where the court said the plaintiff should have known of his claim against the archdiocese when the abuse occurred. *Doe*, 692 N.W.2d at 406. In that case, the court found that the plaintiff alleged only that the archdiocese avoided disclosing and acknowledging the abuse. This did not rise to the level of "employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action," as required to allege fraudulent concealment. *Id.* at 406 (quoting *Tonegatto v. Budak*, 316 N.W.2d 262, 266 (1982)). Unlike Doe, Balk alleges there was an active conspiracy to conceal his claim from him.

*Best v. Park West Galleries* is closer to the facts of this case than *Doe*. *See* No. 305317, 2013 WL 4766678, at *6–7 (Mich. Ct. App. Sept. 5, 2013), *appeal denied*, 843 N.W.2d 901 (Mich. 2014). The claims in *Best* arose from plaintiffs' purchase of forged artwork—purported to be woodcuts by Salvador Dali—through a cruise line auctioneer. *Id.* at *1. The trial court found that a one-year limitations period in plaintiffs' ticket contract with the cruise line did not bar the claim because Michigan's fraudulent concealment statute applied. *Id.* at *6. The appellate court

---

[8] In particular, they point out that one of the songs on the album, "Forget It," had the same title as a song by Sixto Rodriguez that Balk copyrighted in 1967. (Mot. to Dismiss at 20.) They argue this should have been a red flag. Balk responds that "Forget It" is a common song title, and that Gomba had assigned the administration of rights to that song to Jobete Music Co. in or about 1969, "and therefore Balk would not have tracked issues related to that composition." (Resp. to Mot. to Dismiss at 18.) In a post-hearing brief, Defendants argue that all Balk had to do was listen to the album to know that "Forget It" was the song he had copyrighted. (*See* Dkt. 33.) This argument is more appropriately addressed on a motion for summary judgment or at trial. Although the registration of "Forget It" is a public record that can be considered on a motion to dismiss, the Court cannot determine on the present motion whether the song that Balk copyrighted was the same as the song on *Cold* Fact, or whether Gomba had assigned the rights to the song.

rejected the cruise line's argument that plaintiffs did not use reasonable diligence to discover their cause of action: "they have cited no authority to justify a finding that reasonableness in this context would require appellants to either recognize the fraud simply by looking at the artwork or require them to obtain an independent expert at their own expense." *Id.* at *7. The court did not suggest that plaintiffs should have asked the auctioneer whether the works he sold them were forgeries. Similarly here, to say that Balk should have called up Sixto Rodriguez or Clarence Avant and asked them who wrote the songs overlooks the entire premise of Balk's theory: that Avant and Sixto affirmatively acted to conceal the claims from Balk.

As mentioned, this is a close question. Perhaps Defendants are correct that Balk could have and should have done more when he learned an album by Sixto Rodriguez had been released, including a song written by Sixto, yet attributing authorship for all songs to someone else. But the point of fraudulent concealment is that it is "planned to prevent inquiry or escape investigation." *Doe*, 692 N.W.2d at 405. That is just what the allegedly false credits on the album did, according to Balk. And although Balk's investigation was quite limited, "*Cold Fact* was a commercial failure" as far as Balk knew at the time. (FAC ¶ 24.) Balk did not have a lot at stake in tracking down whether Sixto Rodriguez was the true author of the compositions, which likely influenced his decision not to pursue the investigation further. *See Moll*, 506 N.W.2d at 825 ("[T]he phrase 'should have known' is an objective standard based on an examination of the surrounding circumstances.").[9]

Moreover, Balk's burden at this stage in the proceedings is not great. *See Best*, 2013 WL 4766678, at *7 ("Questions of concealment and diligence are questions of fact." (quoting *Int'l*

---

[9] Defendants' counsel argued at the hearing that Balk should have done more to find out whether the album credits were fraudulent, although everyone else in the industry apparently accepted them as true, because—unlike everyone else in the industry—his interests were at stake. But so far as Balk knew, the album was a failure. His interest, if any, was worthless.

*Union United Auto Workers of Am. v. Wood*, 59 N.W.2d 60, 62 (1953))). The Second Amended Complaint need only set forth allegations that permit the court to plausibly infer that a reasonable person in Balk's position would not have discovered the tortious interference and fraud claims against Defendants. The Court draws that inference based on Sixto Rodriguez's complete absence from the album credits, the affirmative statement that others wrote the works, the limited motivation to investigate further given the "commercial failure" of the *Cold Fact* album at the time it was released, the fact that Sixto Rodriguez was under an exclusive contract with Gomba, and, later, the issuance of copyright registrations based on representations that others wrote the works.

Under the statute, Balk had two years from when he discovered the existence of his claims. According to the First Amended Complaint and proposed Second Amended Complaint, Balk "did not become aware of the fraud perpetrated on him and his company until sometime after the release of the film *Searching for Sugar Man*," which was "released theatrically in the United States in July 2012." (FAC ¶¶ 24, 26; SAC ¶¶ 24, 26.) Thus, Balk adequately pled that he timely filed his claims for fraudulent inducement, tortious interference with contract, and fraud in May 2014. The Motion to Dismiss is denied as to Count III of the First Amended Complaint, and Defendants' argument that the Motion to Amend is futile with respect to Count III of the proposed Second Amended Complaint is rejected.

### E. Proposed Count V—Copyright Infringement

The proposed Second Amended Complaint adds a claim for copyright infringement, labeled Count V (there is no Count IV). (PSAC ¶¶ 61–68.) Defendants argue it would be futile to permit this amendment because the claim is barred by the statute of limitations. (Resp. to Mot. to Am. at 13–17.)

As discussed above, it is plausible that Balk was not placed on notice of his claims until sometime after the release of *Waiting for Sugar Man* in July 2012. Thus, Balk plausibly alleged that he timely filed his claim for copyright infringement in May 2014. Because the claim was pled in the original complaint then withdrawn and now restored by the proposed amendment, "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," and the proposed amendment relates back to the date of the original pleading. *See* Fed. R. Civ. P. 15(c)(1)(B).

Defendants argue further that "even if the copyright infringement claim could withstand initial review," Balk is barred from recovering statutory damages and attorneys' fees under 17 U.S.C. §§ 504(c) and 505 because the infringement occurred before the registration of the copyright, and the Copyright Act provides that such relief is not available in that circumstance. (Resp. to Mot. to Am. at 17–18.) *See* 17 U.S.C. § 415 ("[N]o award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for . . . (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."). Defendants do not address whether or how this statute might be affected by the unique circumstances of this case, and Balk did not file a reply brief. Even if Defendants are correct, their argument would not prevent Balk from stating a claim; it would only affect the relief he can seek. Accordingly, the Court finds the argument is premature for a Rule 12(b)(6) motion to dismiss, and will not address it.

Defendants' argument that the Motion to Amend is futile with respect to Count V of the proposed Second Amended Complaint is rejected.

## VI. CONCLUSION AND ORDER

For the reasons stated, Defendants' Motion to Dismiss the First Amended Complaint (Dkt. 18) is GRANTED as to Gomba Music and DENIED in all other respects. Balk's Motion to Amend the Complaint (Dkt. 27) is GRANTED IN PART. Balk is ORDERED to revise the proposed Second Amended Complaint to reflect the dismissal of Gomba Music's claims.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated:  November 24, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on November 24, 2014.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson

30