UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GOMBA MUSIC INC. and HARRY BALK,

     Plaintiffs,

v.

CLARENCE AVANT and INTERIOR
MUSIC CORP.,

     Defendants.

Case No. 14-11767
Honorable Laurie J. Michelson
Magistrate Judge R. Steven Whalen

INTERIOR MUSIC CORP.,

     Third-Party Plaintiff,

v.

SIXTO RODRIGUEZ,

     Third-Party Defendant.

---

**OPINION AND ORDER DENYING THIRD-PARTY DEFENDANT SIXTO
RODRIGUEZ'S MOTION FOR SUMMARY JUDGMENT ON THE PLEADINGS AS
TO DAMAGES [54], GRANTING HIS MOTION TO SET ASIDE DEFAULT [60],
AND AMENDING SCHEDULING ORDER**

---

After Third-Party Defendant Sixto Rodriguez evaded service and then failed to respond

to the Third-Party Complaint, the Court granted Third-Party Plaintiff Interior Music's motion for

a default judgment against Rodriguez in January 2015. (Dkt. 38.) Close to nine months after that

order, Rodriguez filed a motion for summary judgment as to damages. (Dkt. 54.) He says that

notwithstanding the default judgment, Interior cannot recover damages from him as a matter of

law. Shortly afterward, Rodriguez also filed a motion to set aside the default judgment. (Dkt. 60.)

Both motions are fully briefed (Dkts. 59, 61, 63, and 64), and the Court heard oral argument on

the motions on April 12, 2016. For the reasons discussed below, the Court will deny Rodriguez's motion for summary judgment but grant his motion to set aside the default.

## I.

By way of background, this case centers on the songs featured in the 2012 Oscar-winning documentary *Searching for Sugarman*. Sixto Rodriguez allegedly authored the songs over 40 years ago, and they were credited to his brother on a record label owned by Clarence Avant's company, Interior Music. Until recently, Rodriguez did not realize that while the songs never took off in the United States, they were a commercial success in South Africa.

Neither did Harry Balk, who claims that Rodriguez composed the songs while under an exclusive songwriter agreement with his company, Gomba Music. After learning of the songs' success, Balk sued Interior and Avant in a multi-count complaint, essentially claiming that Avant and Interior conspired with Rodriguez to defraud him. In the now operative second amended complaint, Balk alleges that, to avoid Rodriguez's obligation to write songs exclusively for Gomba Music, Interior and Avant perpetrated a scheme in which Rodriguez would write songs for them but falsely attribute them to others. (Dkt. 39, Second Am. Compl.) The second amended complaint includes counts against Avant and Interior for fraud on the copyright office, declaratory judgment that Balk owns the songs, fraudulent concealment/tortious interference with contract and fraud, and copyright infringement. (*Id.*) Importantly, Balk did not sue Rodriguez.

But Interior did. The music company filed a third-party complaint against Rodriguez, claiming that the relevant songs were authored while the two had their own exclusive songwriter agreement (the "ESCA") that Interior entered relying on Rodriguez's representation that he had rescinded his arrangement with Gomba. (Dkt. 11, Third Party Compl.) Interior asserts two

2

breach of contract claims on the basis that Rodriguez falsely warranted that he was able to grant Interior the rights to the songs and that he has failed to cooperate with Interior in this lawsuit in favor of colluding with Balk. (*Id.*)

Interior had difficulty personally serving Rodriguez with the third-party complaint. On July 24, 2016, Interior executed service through alternate means (Dkt. 20) after the Court granted its request to do so (Dkt. 19). When Rodriguez still did not answer the third-party complaint, Interior requested the clerk to enter default on August 15, 2014 (Dkt. 22), which the clerk did that same day (Dkt. 23). Interior moved for a default judgment soon afterward. (Dkt. 25.) In October 2014, attorney Craig Romanzi from the law firm Fieger, Fieger, Kenny, Giroux & Harrington, PC entered an appearance on Rodriguez's behalf. (Dkt. 30.) Even so, Rodriguez did not move to set aside the entry of default or respond to Interior's motion for a default judgment, and the Court granted the motion in January 2015 (Dkt. 38).

Close to two months passed, at which point attorney Geoffrey Fieger filed an appearance on Rodriguez's behalf. Two weeks later, in March 2015, the Court held a scheduling conference. Another attorney from the Fieger firm, Heather Glazer, appeared for Rodriguez at the conference. She indicated that Romanzi had left the Fieger firm. She said that she was also about to leave the firm but that Rodriguez would soon move to set aside the default judgment. He did not.

More months passed without any action by Rodriguez or his counsel. Finally, in September 2015, Rodriguez filed one of the motions now before the court—a "Motion for Summary Judgment on the Pleadings as to Damages"—urging that even with the default judgment in place, Interior cannot recover any damages as a matter of the Michigan law of indemnification and contribution. (Dkt. 54, Rodriguez's Mot. Sum. J.) In response, Interior

argued that its third-party claims were not indemnification or contribution claims but were rather breach of contract claims. (Dkt. 59, Interior's Resp. at 13–18.) Though Interior's third-party claims were clearly labelled as breach of contract claims, Rodriguez says that if Interior indeed asserted "independent" claims seeking something other than contribution or indemnification, he was caught off guard. So along with his reply (Dkt. 61), Rodriguez filed a motion to set aside the default, which he urges is necessary only if the Court denies his other motion. (Dkt. 60, Rodriguez's Mot. Set Aside Def. J.)

## II.

The Court begins with Rodriguez's motion for "summary judgment on the pleadings as to damages." Though described as a motion for "summary judgment," Rodriguez filed the motion pursuant to Federal Rule of Procedure 12(c), which provides, "After the pleadings are closed— but early enough not to delay trial—a party may move for judgment on the pleadings." To decide a motion under Rule 12(c), the Court "must construe the complaint in the light most favorable to [Interior, the third-party plaintiff], accept all well-pled factual allegations as true, and determine whether the complaint states a plausible claim for relief." *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (internal quotation marks and citations omitted).

One major legal obstacle lurks here for Rodriguez: his motion appears to attack his liability alone, an issue that the default judgment foreclosed.

"Where damages are unliquidated a default admits only defendant's liability and the amount of damages must be proved." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (quoting *Fehlhaber v. Fehlhaber,* 681 F.2d 1015, 1026 (5th Cir.1982) (en banc)). Nevertheless, "[e]ven if a default has been entered against a party, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in

4

default does not admit mere conclusions of law." *Anderson v. Johnson*, 194 F.3d 1311 (table) (6th Cir. 1999) (citing *Quirindongo Pacheco v. Rolon Morales*, 953 F.2d 15, 16 (1st Cir.1992)); *see also* Wright & Miller, 10A Fed. Prac. & Proc. § 2688 (3d ed.) (noting the same).

The Court already has found that the unchallenged facts constituted legitimate causes of action for breach of contract. In the Court's opinion and order granting Interior's motion for a default judgment against Rodriguez, the Court described in detail the allegations that, by virtue of his default, Rodriguez had admitted. (Dkt. 38, Order Granting Mot. for Default. J. at 5–6.) The Court also concluded that those allegations stated legitimate causes of action, finding (1) that "Rodriguez breached the ESCA by failing to cooperate in defending against Balk's claims against Interior" and (2) that "if Balk owns the rights to songs on the *Cold Fact* album as he claims, Rodriguez breached the ESCA by falsely warranting that he had the power and authority to grant the rights to those songs to Interior, and that he had not sold or otherwise disposed of those rights." (*Id.* at 6.) The Court then noted that while the default judgment would bind Rodriguez on the issue of liability, he "still has the opportunity to respond on the issue of damages." (*Id.*)

Rodriguez's present motion is not a response on the issue of damages. Though styled as a "motion for summary judgment on the pleadings as to damages," Rodriguez really strikes at the issue of liability. The crux of his argument is this: Balk's claims against Interior involve breach of trust or intentional misconduct, and Michigan law prohibits a party culpable of such conduct from recovering in the form of indemnification or contribution. (*See* Def.'s Mot. at 8–13.) Thus, instead of challenging the amount of recovery, Rodriguez contends that as a matter of law, Interior cannot recover at all. His reply further reveals his true liability-focused objective here, urging that "[o]n the merits, Interior's claims are unenforceable, and border on the frivolous" but

5

that he "elected to file a motion for summary judgment as to damages because, even with the default, Interior can never recover damages by law." (Dkt. 61, Rodriguez's Reply at 5.) Similarly, at oral argument, Rodriguez's counsel described the motion as focusing on a "liability issue that pertains to damages."

If Rodriguez wished to challenge liability, he should have responded to the third-party complaint, and he cannot do so now through a motion for judgment on the pleadings. Other courts have rejected similar attempts to attack liability instead of damages after the entry of a default. For example, in *Leedo Cabinetry v. James Sales & Distribution, Inc.*, 157 F.3d 410, 414 (5th Cir. 1998), the Fifth Circuit observed:

> AKB next challenges the amount of damages awarded by arguing that as a matter of law it cannot be held liable for James Sales' debt based on the documents in the record. The default judgment conclusively established AKB's liability. . . . This is merely a back-door attempt to challenge liability. If AKB wanted to argue about liability it should have answered the lawsuit.

The First Circuit reached a similar conclusion in *Robleto v. Rodriguez*, 995 F.2d 1061 (table), 1993 WL 198175, at *1 (1st Cir. Jun 11, 1993), in holding that certain challenges to damages "represent thinly-veiled attempts to undermine the confession of liability that arises from the entry of default." The court reasoned that "[s]ince appellants, by defaulting, allowed the clock to expire and forfeited their right to contest liability, we cannot allow them to skirt the condign consequences of an entry of default by undertaking an end run after the final whistle." *Id.*

Even if the Court were to consider Rodriguez's argument on the merits, the Court would not grant his motion. Rodriguez's argument relies on this premise: the "nature" of the third-party complaint is a claim for indemnity or contribution. (Def.'s. Mot. at 5.) Thus, Rodriguez says, because the "sole gravamen" of Balk's claims against Interior involve intentional acts or a breach

6

of trust, as a matter of Michigan law, Interior is not entitled to statutory or common law contribution or indemnification and therefore cannot recover any damages. (Def.'s Mot. at 8.)

Rodriguez is correct that under Michigan law, those at fault are limited in their ability to invoke statutory or common law indemnification or contribution remedies. For instance, the Michigan statute that provides a right of contribution between tort-feasors who are jointly and severally liable "does not apply to breaches of trust or of other fiduciary obligations." *See* Mich. Comp. Laws § 600.2925a(8). Similarly, the Michigan common law of contribution "does not permit an intentional tortfeasor recovery of contribution from other joint tortfeasors." *Fid. & Deposit Co. of Maryland v. Newman*, 311 N.W.2d 821, 823 (Mich. Ct. App. 1981). And as for indemnification under Michigan law, "an action for indemnity can only be maintained on the basis of express contract or by a person free of negligence or fault." *Williams v. Unit Handling Sys. Div. of Litton Sys., Inc*., 449 N.W.2d 669, 671 (Mich. 1989).

Rodriguez is also correct that a third-party complaint under Federal Rule of Civil Procedure 14(a) is "in the nature of an indemnity or contribution claim." *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008). As the rule provides, "A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1).

But Rodriguez is not correct that a derivative liability claim must be one for statutory or common law indemnification or contribution. While Interior's third-party claims may well be "in the nature of an indemnity or contribution claim," that does not mean that Interior necessarily asserted actual indemnification or contribution claims. Instead, Interior asserted claims of breach of contract. (Dkt. 11, Third Party Compl.) Interior's first count asserts that Rodriguez breached the ESCA by falsely warranting and representing "that he owned the *Cold Fact* compositions

7

free and clear of any third party rights or other encumbrances." (*Id.* ¶ 28.) Interior's second count asserts that Rodriguez again breached the ESCA by failing to cooperate in defending against Balk's claims. (*Id.* ¶ 36.) Rodriguez has put forth no authority holding that every third-party cause of action—state law breach of contract, breach of warranty, or otherwise—automatically becomes beholden to the substantive limitations under the relevant state's statutory or common law of indemnification and contribution. Instead, his counsel cites his own "legal judgment" that "Interior's third-party complaint under Rule 14 can only seek contribution and indemnity damages from Rodriguez." (Def.'s Mot. Set Aside Def. J., at 5.) This is not sufficient.

That being said, it is worth noting that Interior's rebuttal to Rodriguez's motion is not without issue. Interior cites *Trustees of The Sheet Metal Workers' Local Union No. 80 Pension Trust Fund v. W.G. Heating & Cooling*, 555 F. Supp. 2d 838, 849 (E.D. Mich. 2008), for the proposition that "it is irrelevant whether the basis of the third-party claim is indemnity, subrogation, contribution, express or implied warranty, or some other theory." But the court did not so hold. Instead, the court simply quoted that language—in a parenthetical—without saying whether it agreed with the statement. *W.G. Heating* actually cuts against Interior's argument: the court held that certain third-party claims—labelled as claims for fraud and misrepresentation— were "essentially a request for indemnification." *Id.*

Still, the Court is not persuaded that Interior's third-party breach of contract claims should be subject to Michigan indemnification and contribution law governing joint tort-feasors. Other types of claims, including breach of contract or warranty claims, can be proper as third-party claims: "The secondary or derivative liability notion is central and thus impleader has been successfully utilized when the basis of the third-party claim is indemnity, subrogation, contribution, express or implied warranty, or some other theory." Wright & Miller, 6 Fed. Prac.

8

& Proc. Civ. § 1446 (3d ed.); *see also E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 688 F. Supp. 2d 443, 462–63 (E.D. Va. 2009) ("[I]t is well-settled that [a] breach of contract claim may form the basis for impleader of a third-party defendant, so long as it is sufficiently derivative of or dependent upon the main claim." (internal quotation marks and citation omitted)).

As an aside, because the parties have not fully briefed the issue, the Court will not resolve whether the procedural device Interior used to bring its claims, Federal Rule of Civil Procedure 14(a), was the correct one. "Third-party pleading is appropriate only where the third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim; one that merely arises out of the same set of facts does not allow a third-party defendant to be impleaded." *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008). At first glance, it seems that Interior's allegations that it was duped by Rodriguez cannot be dependent on the outcome of Balk's allegations, most of which assert that Interior conspired with Rodriguez to defraud Balk. Still, the Court understands that Interior contends that its breach of warranty claim against Rodriguez is derivative of Balk's specific claim that he is the true owner of the copyright—a claim that, standing alone, does not imply any fraud on Interior's part.[1] And while Interior concedes that its claim that Rodriguez failed to cooperate in this suit is not in and of itself a derivative claim, that claim can still be joined to a proper third-party claim pursuant to Federal Rule of Civil Procedure 18(a).

---

[1] The notion that Balk can prevail without proving fraud on Interior's part appears consistent with one theory of liability Balk has asserted. *See Gomba Music, Inc. v. Avant*, 62 F. Supp. 3d 632, 644 (E.D. Mich. 2014). (noting that Balk appeared to argue that even if the statute of limitations barred recovery for the conduct dating to the 1970s, he still could assert claims based on copyright infringements that occurred within three years of filing his claim).

In sum, the Court is unconvinced that Interior cannot recover damages against Rodriguez as a matter of law. Even so, with the default judgment entered, "If [Rodriguez] wishes an opportunity to challenge [Interior's] right to recover, [his] only recourse is to show good cause for setting aside the default under Rule 55(c) and, failing that, to contest the amount of recovery." *See* Wright & Miller, 10A Fed. Prac. & Proc. § 2688 (3d ed.). Thus, the Court will deny Rodriguez's motion for judgment on the pleadings and proceed to his motion to set aside the default.

### III.

While a very close call given the culpable conduct of Rodriguez and his counsel, the Court finds that the default should be set aside.

When, as here, an order grants default judgment "without any judgment entry on the issue of damages . . . the more lenient Rule 55(c) standard governs a motion to set aside a default or default judgment" instead of Rule 60(b). *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 840 (6th Cir. 2011) (citations omitted). Under Federal Rule of Civil Procedure 55(c), the Court "may set aside an entry of default for good cause." The Court must consider three factors to determine whether to set aside a default: (1) "[w]hether the plaintiff will be prejudiced"; (2) "[w]hether the defendant has a meritorious defense"; and (3) "[w]hether culpable conduct of the defendant led to the default." *United Coin Meter Co. v. Seaboard Coastline RR.*, 705 F.2d 839, 845 (6th Cir. 1983) (citations omitted).

### A.

For the first factor, to establish prejudice, Interior must show that any delay "will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Childress*, 663 F.3d at 842 (citing *INVST Fin. Grp., Inc. v. Chem-Nuclear*

*Sys., Inc.*, 815 F.2d 391, 398 (6th Cir. 1987)). The Court finds that setting aside the default will not result in this type of prejudice.

Interior does not claim that it would suffer prejudice in the form of lost evidence or a greater opportunity for Rodriguez to engage in fraud or collusion. Its focus is instead increased difficulty with discovery. In its briefing, Interior argued that it would likely have to re-depose several witnesses and conduct additional discovery concerning the substance of its claims and Rodriguez's defenses. (Interior's Resp. at 19.)

But when pressed on the issue at oral argument, Interior failed to articulate any specific discovery it would have to pursue—other than possibly re-deposing Rodriguez. And the Court finds it difficult to believe that the crux of what is at issue in the third-party complaint—the nature of Rodriguez's arrangement with Interior—was not already addressed at least in part during the first round of depositions. This is especially true if, as Interior adamantly asserts, its complaint against Rodriguez is really a proper third-party complaint that will simply rise and fall with Balk's claims. Moreover, at oral argument, counsel for Rodriguez acknowledged that Rodriguez would not need to pursue any discovery surrounding liability. While Rodriguez's counsel left open the possibility of discovery related to damages, no prejudice would result from that, as the default judgment left open that same door.

Interior's argument really amounts to a claim of prejudice in the form increased litigation costs and delay. The discovery cutoff date was looming when Rodriguez filed his motion, and it has since passed. (*See* Dkt. 47.) So setting aside the default would undoubtedly cause delay. On that note, Interior cites *S. Elec. Health Fund v. Bedrock Servs.*, 146 F. App'x 772, 778 (6th Cir. 2005), where in affirming a district court's finding of prejudice, a Sixth Circuit panel observed, "Whether intentional or not, appellant's eight month delay in responding to the allegations in the

suit undoubtedly resulted in tangible harm to the appellees." But the Court has made clear in binding authority that "the relevant inquiry concerns the future prejudice that will result from reopening the judgment, not prejudice that has already resulted from the defendant's conduct." *Childress*, 663 F.3d 832, 842 (6th Cir. 2011) (citation omitted). Moreover, "delay alone is not a sufficient basis for establishing prejudice." *INVST Financial Group*, 815 F.2d at 398 (citation omitted).

Nor is an increase in litigation cost. *United States v. $22,050.00 U.S. Currency*, 595 F.3d 318, 325 (6th Cir. 2010). Accordingly, it is immaterial to the prejudice inquiry that, as indicated at oral argument, the parties plan to file motions for summary judgment if the default is set aside: the Sixth Circuit "encourages setting aside default to allow for resolution on the merits, which will necessarily drive up litigation costs." *Id.*

As for Interior's suggestion that delay is especially problematic here because of some of the witnesses' old age and health issues, Interior has not shown that this is any more of a problem now than it was a few months ago when the discovery period was still open. *See Krowtoh II LLC v. ExCelsius Int'l Ltd*, 330 F. App'x 530, 536 (6th Cir. 2009) (holding that district court abused its discretion by finding prejudice because, among other things, "Plaintiff provided no evidence that specific witnesses' memories faded beyond maintaining that 'witnesses' memories are bound to fade with the passage of time.'").

The prejudice that Interior will face is not the type of prejudice that weighs against setting aside a default judgment. This is particularly true because Interior's inconveniences can be cured to some extent if Rodriguez absorbs some of the costs of increased discovery. Thus, this factor weighs in Rodriguez's favor.

## B.

The second factor is a low hurdle for Rodriguez: "to establish a 'meritorious defense,' the defendant must state 'a defense good at law' which is sufficient if it contains 'even a hint of a suggestion which, proven at trial, would constitute a complete defense.'" *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 434 (6th Cir. 1996) (quoting *INVST Financial Group*, 815 F.2d at 398–99). He has cleared it.

Rodriguez offers several possible defenses. First, he urges that Interior's claim of breach of warranty "occurred with the full knowledge and incitement by Interior." (Def.'s Mot. at 11.) Second, he argues that this claim is barred by the statute of limitations. (*Id.*) Third, he suggests that Interior's claim based on his purported failure to cooperate "is a pure fact question" that a jury would be free to disbelieve. (*Id.* at 11–12.) He also argues that for this claim, "there is an initial question as to what royalties Interior has actually collected on behalf of Rodriguez from the inception of the contract, and what royalties have been disbursed." (*Id.* at 12.) The Court finds that these defenses are sufficient to meet Rodriguez's burden at this stage.

Interior relies on non-binding authority to suggest that Rodriguez's defenses are "totally conclusory" and therefore do not meet his burden. (Pl.'s Resp. at 21.) For instance, in an unpublished opinion, a Sixth Circuit panel quoted *Sony Corp. v. Elm State Electronics*, 800 F.2d 317, 320–21 (2d Cir.1986), for the proposition that "[a]lthough in an answer general denials normally are enough to raise a meritorious defense, the moving party on a motion to reopen a default must support its general denials with some underlying facts." *Clarendon Ltd. v. Foster*, 7 F.3d 232 (table), 1993 WL 339703, at *7 (6th Cir. Sep. 2, 1993). Interior also cites the general rule that "issues adverted to in a perfunctory manner, unaccompanied by some effort at

developed argumentation, are deemed waived," *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997), to suggest that Rodriguez's statute of limitations defense cannot save him.

But controlling Sixth Circuit precedent on this issue has made clear that "even conclusory assertions may be sufficient to establish the hint of a suggestion needed to present a meritorious defense." *Childress*, 663 F.3d at 843 (internal quotation marks and citation omitted). For example, in *$22,050.00 U.S. Currency*, 595 F.3d at 326, the Court held that the mere listing of several conclusory affirmative defenses—"failure to state a claim, excessive fine in violation of the Eighth Amendment, and illegal search and seizure"—without any factual support, was sufficient to meet the meritorious defense standard.

Interior also argues at length why Rodriguez's defenses may not be successful. But that reflects another misunderstanding of the controlling standard: "the test is not whether a defense is likely to succeed on the merits; rather, the criterion is merely whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Childress*, 663 F.3d at 843.

Rodriguez's asserted defenses create some possibility that the outcome of a full trial will be contrary to the result achieved by the default. For instance, if it were proved that Interior perpetrated a scheme to defraud Balk, that would undermine Interior's breach of warranty claim. Granted, the statute of limitations defense might be to some extent meritless because Interior apparently could not have filed a claim on the basis of Rodriguez's failure to cooperate until Balk filed suit. The ESCA provision relied upon by Interior provides that "[Rodriguez] will at [Interior's] request, cooperate fully with [Interior] in any controversy which may arise" and that "[i]f a claim is presented against [Interior] . . . [Interior] shall have the right . . . to withhold any and all royalties that may be or become due with respect to such disputed compositions pending

14

the final adjudication or settlement of such claim." (Third Party Compl. ¶ 14.) Even so, Count I of the third-party complaint—the claim that Rodriguez breached certain warranties and representations when he originally entered the ESCA over 40 years ago—might still be subject to the statute of limitations.

Thus, this factor weighs in favor of setting the default aside: Rodriguez has satisfied the very low bar of putting forth a defense that is "good at law."

## C.

As for the final factor, Rodriguez was surely culpable, and that cannot be ignored. "To be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Shepard Claims Serv., Inc. v. William Darrah & Associates*, 796 F.2d 190, 194 (6th Cir. 1986).

Rodriguez's culpability started with his attempts to evade service, which the Court detailed in its order allowing alternate service. (Dkt. 19.) After the alternate service, and after the clerk entered a default on August 15, 2014, Rodriguez still made no effort to respond for some time.

An attorney from the Fieger firm, Craig Romanzi, finally filed an appearance on behalf of Rodriguez in October 2014. (Dkt. 30.) After that appearance, Rodriguez's culpability was manifested by his counsel's persistent pattern of inexcusable neglect. Counsel never responded to Interior's motion for a default judgment, which the Court granted in January 2015. (Dkt. 38.) During the Rule 16 conference held in March 2015, there was specific discussion of the default, yet another six months passed before the law firm took any action. And instead of moving to set aside the default, the firm made a strained attempt to challenge Rodriguez's liability under their self-styled "motion for summary judgment as to damages" under Rule 12(c), which the Court

15

addressed above. The firm only moved to set aside the default in October 2015, and only for questionable  reasons: the primary argument is that Interior's response to the summary judgment motion surprised Rodriguez by asserting that the third-party claims were for breach of contract, not indemnification or contribution (even though the claims were clearly labelled and pled as breach of contract claims). As the motion puts it, Rodriguez was supposedly "misled by the scope of Interior's third-party complaint." (Def.'s Mot. at 2.) This motion to set aside the default came at a time when just three months were left before the close of discovery.

To be sure, these actions demonstrate a reckless disregard for these proceedings, making this factor weigh in favor of keeping the default judgment in place.

\* \* \*

In balancing these factors, the Court is mindful of several considerations. For one, there is a "strong preference for trials on the merits in federal courts." *Shepard Claims Serv.,* 796 F.2d at 193. Additionally, the first two factors—ones that weigh in favor of setting the default in this case aside—are "the two most important considerations." *See $22,050.00 U.S. Currency*, 595 F.3d at 325. And "when the first two factors militate in favor of setting aside the entry, it is an abuse of discretion for a district court to deny a Rule 55(c) motion in the absence of a willful failure of the moving party to appear and plead." *Shepard Claims Serv.,* 796 F.2d at 194.

While Rodriguez and his counsel were culpable, that does not tip the balance in favor of sustaining the default. Resolving all doubts in Rodriguez's favor, *see Childress*, 663 F.3d at 844, the primary culpability here is rooted in his attorneys' neglect, not his own willfulness. "[M]ere negligence or failure to act reasonably is not enough to sustain a default." *$22,050.00 U.S. Currency*, 595 F.3d at 327. And though Rodriguez's counsel has offered no excuse for their neglect, "it is not absolutely necessary that the neglect or oversight offered as reason for the

16

delay in filing a responsive pleading be excusable." *Id.* (quoting *Shepard Claims Serv.,* 796 F.2d at 194).

Thus, on balance the Court finds good cause to set aside the default.

## IV.

For the reasons discussed, IT IS ORDERED that Third-party Defendant Sixto Rodriguez's motion for summary judgment as to damages (Dkt. 54) is DENIED, and his motion to set aside the default (Dkt. 60) is GRANTED.

IT IS FURTHER ORDERED that discovery is extended for 30 days from the entry of this Order for the following limited purposes concerning the third-party complaint: Rodriguez may conduct discovery on the issue of damages, and Interior may conduct discovery on the issues of damages and liability. Any depositions are to be scheduled during this 30-day time period, and in no event shall any deposition occur beyond 60 days from the entry of this Order.

IT IS FURTHER ORDERED that Rodriguez is to pay Interior up to $5,000 in reasonable fees or costs for Interior's additional discovery.

IT IS FURTHER ORDERED that the dispositive motion cut-off date is extended from May 20, 2016 until July 20, 2016 and that the trial and related dates are adjourned to dates to be determined by the Court.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated:  April 15, 2016

17

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 15, 2016.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson